UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHY M. BUTLER, | § | |
|     *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-2854 |
| | § | |
| INTRACARE HOSPITAL NORTH, *et al.*, | § | |
|     *Defendants*. | § | |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Kathy M. Butler brings suit against IntraCare Hospital North and Cambridge Health Foundation for alleged violations under the Family and Medical Leave Act (FMLA), of both her prescriptive or substantive rights under the Act, as well as the proscriptive protections against retaliation or discrimination for exercising those rights. Defendants IntraCare and Cambridge seek summary judgment (Dkt. 20) on both claims. For the reasons that follow, the motion for summary judgment is GRANTED in part and DENIED in part.

**BACKGROUND**

Butler was employed by IntraCare starting in October 2002. In early February 2005, Butler began working as an employee benefits coordinator for IntraCare. Her direct supervisor in that position was Valinda Allen, the financial manager of Cambridge Health Foundation. During the interview for this position, Butler explained that she needed to take up to three months' leave to care for her husband in the near future. Butler's husband was diagnosed with Non-Hodgkins Lymphoma and was scheduled to undergo transplant surgery in March of that year. The surgery was subsequently rescheduled for May 2005. Butler had also informed her prior supervisor at IntraCare, Cindy Macha, of the same upcoming medical issue.

IntraCare had concerns about hiring and training someone for the employee benefits coordinator position who would shortly be off for three months.[1] Therefore, either during that interview or shortly after, IntraCare suggested that in lieu of taking FMLA leave, it would provide Butler with a computer so that she could work from home during the period following her husband's surgery.[2]

On May 18, 2005, Butler's husband had the operation. A short time later, he became critically ill. Butler remained off work until June 10, 2005. On either a daily or near daily basis, Butler updated Allen on her husband's condition and her continued need to take time off. During this time Butler was using vacation and sick time. On June 10, 2005, Butler tested the computer IntraCare installed in her home and found that it did not function properly. She called Allen to tell her about the problem. Allen requested that Butler come to IntraCare that day.

Butler was brought in for a meeting with Deo Shanker (an officer of either IntraCare or Cambridge[3]), Valinda Allen, and Teisha York (Hospital Administrator). During this meeting Shanker informed Butler she was being terminated. York also made a statement to the effect that IntraCare was concerned about her health and that Butler should come back in three months when she and her husband were doing better and IntraCare would find another position for her at the hospital.[4]

---

[1]   *See* Dkt. 24, Ex. 2, pp. 28-30.

[2]   *See* Dkt. 24, Ex. 2, pp. 28-30.

[3]   The parties' briefing does not make clear Deo Shanker's exact position. He appears to be either the chief financial officer or chief executive officer of either or both IntraCare and Cambridge.

[4]   *See* Dkt. 24, Ex. 2, pp. 95-96; Dkt. 21, Ex. C, p. 48.

Butler also maintains that after she was terminated she later returned to IntraCare to retrieve her personal belongings. At that time she spoke with Shelly DeSilva who stated that she (DeSilva) and Valinda Allen had decided Butler needed to take FMLA leave, but Shanker had declared that could not happen.[5]

The defendants maintain that "[t]he sole reason for Plaintiff's termination from the position of employee benefits coordinator was her poor performance and lack of qualifications for the position."[6] It is the defendants' position that IntraCare allowed Butler to work at home on a temporary basis during her husband's convalescence on the condition that after a period of training her performance would be sufficient to warrant the reduced supervision such an arrangement would require. IntraCare maintains that during her training, Butler encountered difficulties in performing the duties of the position and that after her work was reviewed by DeSilva it was determined Butler was not qualified to perform the duties of an employee benefits coordinator. IntraCare also argues that Butler was advised that she could return to work when she was ready but never did so.

## LEGAL STANDARDS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-

---

[5]     *See* Dkt. 24, Ex. 2, ¶ 30.

[6]     Dkt. 21, ¶ 28.

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## ANALYSIS

The FMLA provides that an eligible employee may take up to twelve workweeks of leave "[i]n order to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). It also allows for leave on the employee's own behalf "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA directs that:

> In any case in which the necessity for leave under subparagraph (C) or (D) of subsection (a)(1) of this section is foreseeable based on planned medical treatment, the employee—
> (A) shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider of the employee or the health care provider of the son, daughter, spouse, or parent of the employee, as appropriate; and

>    (B)   shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2).

The FMLA has two general provisions: (1) prescriptive obligations on the part of employers to grant employees substantive rights under the Act such as those above; and (2) a proscriptive obligation not to penalize employees for exercising those rights. *See Mauder v. Metro. Transit Auth. of Harris County*, 446 F.3d 574, 580 (5th Cir. 2006), *cert. denied*, — S. Ct. — (Oct. 2, 2006); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999). Butler asserts a cause of action based on both.

### 1.   Cambridge Health Foundation

The defendants maintain that Cambridge Health Foundation is entitled to judgment as a matter of law because it was never an employer of Butler and therefore had no obligation to her under the FMLA. Butler makes no attempt to refute the defendants' assertion or offer any evidence to the contrary. With respect to Cambridge Health Foundation, therefore, summary judgment is appropriate. For purposes of the remainder of the analysis, the court will focus solely on IntraCare as Butler's employer.

### 2.   Notice

IntraCare asserts that it is entitled to summary judgment because Butler never requested FMLA leave nor provided notice of her intention to take FMLA leave. IntraCare argues that Butler

never made a "valid request for FMLA leave" as she did not fill out the form for making such a request.[7] IntraCare stresses that Butler, as an employee benefits coordinator, should have been particularly aware of its policies for requesting leave but failed to properly avail herself of those procedures.

"An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on . . . planned medical treatment for a serious health condition of the employee or of a family member." 29 C.F.R. § 825.302(a). Where the need for FMLA leave is foreseeable:

> An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.

29 C.F.R. § 825.302(d).

The parties do not appear to dispute that Butler gave advance verbal notice to her previous supervisor Cindy Macha that she would need FMLA leave for her husband's surgery, or that Butler informed IntraCare during her interview for the employee benefits coordinator position that she anticipated needing three months off to care for her husband. Having given verbal notice, IntraCare's insistence on a formal written request appears to place a greater burden on Butler for invoking FMLA leave than is contemplated by the Act and its regulations. In addition, Butler argues that any written requirement was waived by her supervisors with whom she kept in nearly daily contact about her situation because they never requested any formal written request for leave. The

---

[7] Dkt. 21, ¶ 40.

evidence does suggest that Butler gave repeated notice of her need for leave, for as much as two years in advance of the anticipated operation. There is, at the very least, a genuine dispute whether Butler provided adequate notice.

IntraCare's argument on notice also misses the mark for an even more significant reason. The facts viewed favorably to Butler suggest the following: Butler sought to exercise her right to take FMLA leave; rather than grant the leave, IntraCare persuaded Butler to work from home. Due to the seriousness of her husband's medical condition, Allen and DeSilva determined that Butler would need to take FMLA leave, not only because of the serious medical condition of her spouse, but because Butler's own emotional state precluded her from working. Allen and DeSilva relayed this conclusion to Shanker. Shanker decided this was not an option and terminated Butler rather than grant the FMLA leave. Under this view, not only did IntraCare have notice of Butler's need to take FMLA leave, it was the very fact that they concluded she needed FMLA leave that led to IntraCare terminating her.

**3.     Denial of Benefits**

IntraCare further contends that summary judgment is warranted because Butler "has not demonstrated that she was denied any of the benefits to which she was entitled under the FMLA."[8] IntraCare argues that Butler was not denied leave, did not lose benefits as a result of taking leave, nor did it fail to restore her to the same or an equivalent position on return from taking leave. This argument is a slight recasting of IntraCare's notice argument: since Butler never requested FMLA

---

[8]     Dkt. 21, ¶ 41.

leave, she was never denied FMLA leave. And because Butler was never denied benefits under the FMLA, she has no FMLA claim.

This argument is unpersuasive for the same reasons touched upon in the discussion on notice. First, a viewing the facts favorable to Butler could lead a reasonable fact finder to infer that Butler was discouraged from taking FMLA leave in the first instance when IntraCare suggested that she work from home rather than take such leave. Second, if it is true that Allen and DeSilva determined that Butler needed to take FMLA leave on or about June 10, 2005 due to her own emotional state, then a reasonable fact finder could conclude that Butler was terminated by Shanker in order to prevent Butler from taking FMLA leave. If this was the case, Butler was denied her statutory entitlements under the FMLA by IntraCare preemptively terminating her before she could exercise those rights. Thus, there is at least a genuine issue of material of fact on whether Butler was denied leave.

Such a preemptive denial or interference would be unlawful. The FMLA prohibits both the interference with "the exercise of *or the attempt to exercise*, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (emphasis supplied). And under the regulations, "[a]n employer is prohibited from interfering with, restraining, or denying the exercise of (*or attempts to exercise*) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1) (emphasis supplied). The regulations elaborate on "interfering with." "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include *manipulation by a covered employer to avoid responsibilities under FMLA* . . . ." 29 C.F.R. § 825.220(b) (emphasis added). Such "manipulation"

8

would logically include terminating an employee to avoid providing FMLA leave to which an employee was otherwise entitled.

**4.      Retaliation**

To make a prima facie showing of retaliation under the FMLA, a plaintiff must show: (1) that she was protected under the FMLA; (2) that she suffered an adverse employment decision; and (3) that she was either treated less favorably than an employee who had not requested leave under the FMLA, or that the adverse decision was made because she took FMLA leave. *See Mauder v. Metro. Transit Auth. of Harris County*, 446 F.3d 574, 583 (5th Cir. 2006); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). If the plaintiff makes a prima facie case, then the burden shifts to the employer to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action. *See Hunt*, 277 F.3d at 768. If the employer satisfies this burden, the employee must show by a preponderance of the evidence that the employer's reason is a pretext for retaliation. *See id*.

IntraCare appears to forgo argument on the prima facie case and instead proceeds to the second part of the burden shifting analysis by proffering a legitimate, non-retaliatory explanation for Butler's termination: after a period of training at the employee benefits coordinator position, Butler's work was unsatisfactory. This satisfies IntraCare's burden of production.

The analysis therefore proceeds to the final phase—whether Butler has shown that IntraCare's stated reason is pretextual. IntraCare makes the conclusory argument that Butler "is unable to establish pretext because the reason proffered for her removal from the position of employee benefits coordinator was genuine, since her work in the position was in fact

9

unsatisfactory."[9]  First, this assertion by itself is simply inadequate to meet IntraCare's summary judgment burden of demonstrating there exists no genuine issue of material fact.  Second, the record contains evidence that, if believed, could demonstrate that IntraCare's explanation for the termination was not genuine.  These include the alleged statements by Shanker, Allen, and DeSilva.

IntraCare contends that "Mr. Shanker's statement, if such occurred, that FMLA leave instead of termination 'could not happen' [does not] give rise to any inference that the termination was for any reason other than performance."[10]  The court disagrees.  A reasonable trier of fact could very well draw that inference.  If Allen and DeSilva suggested to Shanker that Butler would need to take FMLA leave both to care for her spouse and because her own emotional state was such that she could not work, Shanker responded that this "could not happen," and then terminated Butler the same day, a reasonable fact finder could certainly infer that IntraCare's stated reason for terminating Butler was simply pretext to avoid its obligations under the FMLA.  A trier of fact could find this inference further bolstered given that Butler was invited to return to IntraCare in a few months when she was doing better.  At the very June 10, 2005 meeting in which Butler was allegedly terminated by IntraCare because of her "poor performance and lack of qualifications for the position," she was encouraged to return to IntraCare "when she was ready to return to work."[11]  Viewing this favorably to Butler certainly casts doubt on whether Butler was really terminated for poor performance and lack of qualifications, or whether this was mere pretext for preemptively terminating her during the

---

[9]     Dkt. 21, ¶ 52.

[10]    Dkt. 25, p. 4.

[11]    Dkt. 21, Ex. 2, p. 2 (Allen Affidavit).

period she required FMLA leave, while allowing her to return to work as soon as the need for such leave had passed.

Furthermore, IntraCare has not included any documentation of Butler's purportedly inadequate performance suggesting deficiencies in Butler's work before the decision to terminate her. *Cf. King v. Preferred Tech. Group*, 166 F.3d 887, 894 (7th Cir. 1999) (summary judgment is inappropriate on an FMLA retaliation claim when an employer does not offer any credible explanation for the adverse employment decision at issue other than an explanation that may be false).

The court therefore finds that there is a genuine issue of material fact whether IntraCare's proffered reason for Butler's termination was false and the real reason was a preemptive denial of Butler's anticipated use of leave pursuant to the FMLA.

## Conclusion

Accordingly, the defendants' motion for summary judgment is GRANTED in part and DENIED in part. Judgment is granted in favor of defendant Cambridge Health Foundation; summary judgment for defendant IntraCare Hospital North is denied.

Signed on October 4, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge